**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
JOHM M. SIMON, ESQ.,                    :
                                        :
    Plaintiff,                         :  Civil Action No. 10-4286 (SRC)
                                        :
    v.                                 :
                                        :         **OPINION**
THE PRUDENTIAL INSURANCE               :
COMPANY of AMERICA,                     :
                                        :
    Defendant.                         :
_____:

**CHESLER**, **U.S.D.J.**

    This matter comes before the Court on two motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion by Defendant the Prudential Insurance Company of America ("Prudential"); and 2) the motion by Plaintiff John M. Simon, Esq. ("Plaintiff"). For the reasons stated below, Plaintiff's motion will be granted, and Defendant's motion will be denied.

    In brief, this case arises from a dispute over disability insurance benefits. The following facts are undisputed. Plaintiff was employed as an environmental litigation trial attorney and was covered under a group long-term disability insurance policy issued by Prudential. Under the terms of the policy, one of the requirements for "total disability" is: "You are unable to perform, for wage or profit, the material and substantial duties of your occupation." (Coppola Dec. Ex. 1 at D 002187.)

    In 1998, Plaintiff was injured in a motor vehicle accident. Plaintiff had a period of disability at that time, returning to work on March 22, 1999. Plaintiff then worked until August 27, 2008. Plaintiff submitted a claim for long-term disability benefits on or about September 30,

2008. Prudential approved Plaintiff's claim pending further review, and paid disability benefits for the period from November 26, 2008 through December 31, 2009. After completing a review of Plaintiff's claim, Prudential terminated his disability benefits. Following an appeals process, Plaintiff instituted this suit, filing a Complaint with eight counts. An Amended Complaint asserts four counts. On October 28, 2010, this Court entered a consent Order dismissing the second, third, and fourth counts in the Amended Complaint. Only the first count in the Amended Complaint remains, for arbitrary and capricious denial of benefits under ERISA, which is the subject of the two instant motions for summary judgment.

The parties thus ask the Court to review Prudential's decision to terminate Plaintiff's disability benefits. The parties agree on the legal standard to be applied to this Court's review of Defendant's denial of benefits. As the Third Circuit recently held:

> We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits. An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.

Miller v. Am. Airlines, Inc., 632 F.3d 837, 844-845 (3d Cir. 2011) (citations omitted). The parties do not dispute that the plan granted the administrator discretionary authority to determine eligibility for benefits.

In considering whether the administrator abused its discretion, this Court considers a variety of factors:

> [B]enefits determinations arise in many different contexts and circumstances, and, therefore, the factors to be considered will be varied and case-specific. In *Glenn*, factors included procedural concerns about the administrator's decision making process and structural concerns about the conflict of interest inherent in the way the ERISA-governed plan was funded; in another case, the facts may present an entirely different set of considerations. After *Glenn*, however, it is clear that courts should take account of several different considerations of which a conflict

of interest is one, and reach a result by weighing all of those considerations.

Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 (3d Cir. 2009) (citations omitted).

This Court's first step in the analysis requires an inquiry into whether a structural conflict of interest exists. See, e.g., Miller, 632 F.3d at 847. Plaintiff argues that Prudential is both the administrator and the decision maker for the plan in this case and that, pursuant to Smathers v. Multi-Tool, Inc., 298 F.3d 191, 197 (3d Cir. 2002), this constitutes a conflict of interest. In response, Prudential, while not conceding the existence of a conflict of interest, does not dispute it, but merely argues that such a conflict is but one factor for the Court to weigh in its analysis. (Def.'s Opp. Br. 16-17.) There appears to be no real dispute that, to the extent that a structural conflict of interest exists, this factor should be weighed in favor of Plaintiff.

The Court next conducts an analysis of the procedural factors, inquiring into the procedure followed by the administrator in making its decision to terminate Plaintiff's benefits. The factual record in this case contains a wealth of detail. The key document is the August 4, 2010 letter (the "Appeal Letter") from Prudential which gives the decision on Plaintiff's appeal of the termination of benefits. (D002782C-D002782L). The letter states this decision: "After completing a through review of Mr. Simon's medical records and claim file, we have determined that the available information does not support a level of impairment that would preclude him from performing the material and substantial duties of his own occupation." (D002782L).

The Appeal Letter does not reduce the basis for the decision to a simple summary. The letter does, however, set forth four pieces of evidence, which must be presumed to have provided the basis for the decision: 1) the external independent review by the pain medicine specialist; 2) the external independent review by the psychiatric specialist; 3) the surveillance report; and 4) the occupational duties analysis. Only the first two pieces of evidence contain analysis of the

3

medical evidence of disability.

The Appeal Letter does not discuss the reports from the two external independent reviews but, instead, quotes them at length. Indeed, the majority of the Appeal Letter is two long quotations from each reviewer. Again, it is presumed that these quotes provide the basis for the unfavorable decision.

Of the two external reviews, the review by the pain medicine specialist is most relevant to Plaintiff's claim. Plaintiff's initial statements to Prudential in support of his claim indicate that pain-related medical problems played a central role:

> As a result of the automobile accident, I am no longer able to be an environmental law trial attorney, the position for which I was hired by Wolff & Sampson PC. Due to the pain in my legs and the concomitant increase in my consumption of pain medication, as well as the post traumatic stress associated with being in an automobile, I have not participated in any litigation-related activities for years . . .

(D001334). On October 18, 2008, Plaintiff sent Prudential a completed questionnaire, accompanied by a statement. (D001718). The statement puts greatest emphasis on the chronic pain that Plaintiff has been experiencing and the effects of the pain medication. (Id.) In this context, Prudential's choice of a pain medicine specialist, Dr. Richard Kaplan, to do the external independent review appears wise.

According to his report, Dr. Kaplan reviewed the thousand-plus pages of medical records in Plaintiff's claim file. (D000946). As quoted in the Appeal Letter, Dr. Kaplan opines:

> Clearly, in this case this individual and his physicians have reported a level of impairment which creates a profound and incompletely explained outlier situation.
>
> This case is particularly complicated by a reported disparity in the claimant's physical abilities between his home in New Jersey versus his home in Arizona, as reported among other dates by Dr. Malanga on (June 11, 2009) and by Mr. Simon himself in his questionnaire of September 01, 2009. The degree of reported difference in function between locations cannot be explained based upon the

specific diagnoses in this case, as again this creates a substantial outlier situation in terms of suspected versus reported physical abilities.

Another confounding factor in this case is inconsistencies in the medical documentation.

. . .

Thus, overall assessment of this claimant's appropriate restrictions/limitations is quite complicated by the above confounding factors. There are numerous inconsistencies as noted above in terms of this claimant's cognitive and physical abilities which have only been subjectively assessed but not objectively assessed; also this claimant's reported or perceived limitations both cognitively and physically are profound statistical outliers, with additional unexplained geographic variations in his reported abilities.

From a medical perspective, given these factors, a more precise assessment of this claimant's restrictions/limitations cannot be made in the absence of a forensic physical assessment. Pending such forensic data, the above is an estimate of the claimant's minimal level of physical abilities.

. . .

Overall, my opinion is that the medical records do not support any significant adverse side effects for any medication or combination of medications given the absence of forensic neuropsychological testing. In my opinion, the inconsistencies in the medical record and on the available cognitive examinations may be better explained with a forensic neuropsychological evaluation.

Chronic pain is subjective and cannot be assessed objectively. What can be said in this case is that the claimant's reported and perceived limitations from his pain appear to be profoundly out of proportion of that would be expected based upon the objective findings and the patient's reported functional limitations from pain creates a substantial statistical outlier situation as described in the answers above in consideration of the claimant's underlying diagnosis. It is quite unusual for an injury such as this claimant has to produce pain creating the degree of reported vocational limitations as the claimant reports. The degree of reported change in pain and function between the claimant's homes in New Jersey an Arizona is quite atypical. The degree of functional limitations this claimant reports from pain is also atypical in view of the correspondence and in the records from the claimant himself, which suggest an extremely literate and cognitively functional individual. As per my answers above, these observations overall raise questions which would likely be addressed through a more forensic evaluation.

(D002782E-D002782G).

Dr. Kaplan's assessment appears thoughtful, comprehensive, and persuasive. It is clear that Dr. Kaplan found that the medical records, viewed as a whole, presented puzzling inconsistencies which made it difficult for him to assess Plaintiff's functional limitations. Dr. Kaplan concluded that the records raised questions which – as he tactfully put it – might be better explained through further evaluation. While it is true that Dr. Kaplan never said, "I recommend further evaluation," this Court is satisfied that Dr. Kaplan opined that further evaluation was needed to address the puzzling questions that the medical record raised.

Prudential appears to have ignored Dr. Kaplan's recommendation. Certainly, Prudential does not claim that it followed the recommendation or obtained further evaluation. Neither the record nor the briefs contain any explanation for why the medical expert's recommendation to Prudential was not followed. This Court concludes that Prudential ignored the recommendation of its pain medicine expert.

The question, then, is whether it was arbitrary and capricious for Prudential to ignore the recommendation of its pain medicine expert in a case in which it appears that pain medicine is at the core of the dispute over Plaintiff's claimed disability. This Court finds that it was arbitrary and capricious.

The Third Circuit has given this guidance for arbitrary and capricious review in an ERISA benefits case:

> We review various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded, to determine if the conclusion was arbitrary and capricious. Whereas the structural inquiry focuses on the financial incentives created by the way the plan is organized, i.e., whether there is a conflict of interest, the procedural inquiry focuses on how the administrator treated the particular claimant. Specifically, in considering the process that the administrator used in denying benefits, we have considered numerous irregularities to determine whether, in this claimant's case, the administrator has given the court reason to

doubt its fiduciary neutrality.

Miller, 632 F.3d at 845 (citations omitted). This Court's determination that Prudential ignored the recommendation of its pain medicine expert falls within the scope of the procedural inquiry. Pursuant to Miller, the question is whether this act gives the Court reason to doubt Prudential's fiduciary neutrality. It does.

In Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008), the Supreme Court explained that, in the context of ERISA, courts "should consider a benefit determination to be a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries)." Furthermore, as the Supreme Court observed in Varity Corp. v. Howe, 516 U.S. 489, 506 (1996):

> ERISA requires a "fiduciary" to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a)(1).

On this record, no reasonable person could conclude that, when Prudential ignored the opinion and recommendation of its pain medicine expert, it acted solely in the interest of the beneficiary, Plaintiff. To the contrary, it is clear that Prudential breached its fiduciary duty of loyalty to the beneficiary. Prudential's decision to ignore Dr. Kaplan's opinion and recommendation certainly was not a decision made solely in the interest of Plaintiff – it was a decision against the interest of Plaintiff. This Court finds that Prudential's decision to terminate Plaintiff's benefits was arbitrary and capricious.

This conclusion is supported by a similar decision made by the Third Circuit in Miller. In considering the procedural factors, the Third Circuit examined whether the administrator had properly evaluated all of the participant's medical diagnoses, and stated:

> An administrator's failure to address all relevant diagnoses in terminating a

>claimant's benefits is also a cause for concern that suggests the decision may have been arbitrary and capricious. *See Kosiba v. Merck & Co.*, 384 F.3d 58, 68-69 (3d Cir. 2004). In *Kosiba*, we instructed the district court to consider on remand whether the administrator properly evaluated the claimant's medical conditions.

632 F.3d at 853. Given that Prudential ignored the opinion and medical recommendation of its own expert – finding that the medical record as it stood was insufficient to arrive at an assessment and that further evaluation was needed – the record before this Court demonstrates that Prudential failed to properly evaluate the claimant's medical conditions. Under Miller, this "counsels towards finding that [the administrator's] decision was arbitrary and capricious." Id. at 854.

In addition, this Court has some concern about Prudential's construction of "the material and substantial duties of your occupation." In the Appeal Letter, Prudential states that it considers Plaintiff's occupation to be "Lawyer." (D002782K). The Appeal Letter lists job tasks that would be typically performed by a typical, ordinary lawyer. (Id.) The problem is that, as Prudential has made abundantly clear by its reliance on the analysis of Plaintiff's earnings performed by Nawrocki Smith, LLP (the "Earnings Analysis"), Plaintiff was no ordinary lawyer. The Earnings Analysis shows that, for the years 2006, 2007, and 2008, the majority of Plaintiff's earned income came from his sharing in "the total amount of fees received from clients in which the claimant originated." (D001936). Prudential makes much of how much of such income Plaintiff earned in 2008, just prior to his filing his disability claim, but, curiously, analysis of the functional requirements for earning this large income is entirely absent from the record.

The omission is startling. Prudential points to the fact that, over three years, Plaintiff earned over a million dollars in income from an occupational activity – generating business for the firm by bringing in clients – that is nowhere mentioned in the analysis of the duties of

8

Plaintiff's occupation. In <u>Miller</u>, the Third Circuit held that "it is essential that any rational decision to terminate disability benefits under an own-occupation plan consider whether the claimant can actually perform the specific job requirements of a position." 632 F.3d at 855. Because Prudential overlooked the functional requirements of the work activities that resulted in Plaintiff's earning the majority of his employment income over his last three years at work, this Court finds that Prudential's decision did not sufficiently consider whether Plaintiff could actually perform all of the specific job requirements of his actual occupation. Under <u>Miller</u>, this is a procedural factor that constitutes a significant omission and suggests that the decision to terminate benefits was arbitrary and capricious.

  Having examined both the structural and procedural factors, this Court finds that both the structural and procedural considerations weigh in favor of finding that Prudential's decision to terminate Plaintiff's disability benefits was arbitrary and capricious. This Court concludes that Prudential's decision to terminate Plaintiff's disability benefits was arbitrary and capricious. There are no material factual disputes which preclude the entry of judgment as a matter of law, and Plaintiff has demonstrated that he is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment will be granted, and Defendant's motion for summary judgment will be denied.

  As to the proper remedy for an arbitrary and capricious termination of benefits, under Third Circuit law:

> In the termination context . . . a finding that a decision was arbitrary and capricious means that the administrator terminated the claimant's benefits unlawfully. Accordingly, benefits should be reinstated to restore the status quo.

<u>Miller</u>, 632 F.3d at 857. The proper remedy under <u>Miller</u> is reinstatement of Plaintiff's benefits.

  Plaintiff, having prevailed, asks this Court to award attorney's fees, pursuant to 29 U.S.C.

§ 1132(g)(1). To guide a district court in evaluating whether a prevailing plaintiff in an ERISA case should receive an award of attorneys' fees, the Third Circuit has articulated the following five factors to be considered by the Court:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F2d 670, 673 (3d Cir. 1983). Plaintiff argues for an award of attorney's fees based solely on Prudential's bad faith. This does not persuade the Court to make such an award, for two reasons. First, there are five factors in the Ursic standard, and Plaintiff has not made any argument regarding four of the five factors. Second, to the extent that this Court might view Prudential's conduct as indicative of bad faith, it is not sufficiently egregious, without more, to justify an award of attorney's fees. Plaintiff's request for attorney's fees will be denied.

In conclusion, Plaintiff has shown that he is entitled to judgment as a matter of law, and his motion for summary judgment is granted. Plaintiff's application for attorney's fees is denied. Defendant's motion for summary judgment is denied.

                                                                   s/ Stanley R. Chesler
                                                                 Stanley R. Chesler, U.S.D.J.

Dated: July 20, 2011